[Nos. 40503, 40504.   En Banc.   March 5, 1970.]

ALOHA LUMBER CORPORATION, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.**

*Reported in 466 P.2d 151.

*Ingram, Zelasko & Goodwin,* by *Ernest M. Ingram,* for appellant.

*The Attorney General* and *Gomer L. Cannon, Assistant,* for respondent Department of Labor and Industries.

*James J. Solan,* for respondent Moxley.

*Gladys Phillips,* for respondent Tate.

ROSELLINI, J.—The superior court upheld a determination by the Board of Industrial Insurance Appeals that the claimants, Moxley and Tate, were in the course of their employment when they suffered injuries in an automobile accident. The order of the board had reversed an order of the supervisor of industrial insurance denying the claims.

The correctness of the board's decision is challenged here by the employer, as it was in the superior court. A majority of the board filed opinions which considered and disposed of the appellant's contentions in a very scholarly and well-reasoned manner. We have taken the liberty of adopting a substantial portion of those opinions as our own.

It was stipulated that the claimants, the only respondents arguing on the merits of this appeal, were injured in an automobile accident on April 7, 1965, while on their way home from work. The sole issue presented for decision is whether or not they were in the course of their employment.

At the time of his injury, the respondent Moxley was employed as "mechanic of the woods" at Aloha, Washington. He was required to keep the mechanical equipment used in the appellant's business in operating condition. He worked mostly in the woods, using a work truck that was not licensed for highway use. When it was necessary for him to drive to a nearby town, or to Portland, Oregon, for

materials, he used a pickup truck provided by the appellant for that purpose, among others.

Moxley's regular work hours were from 8 a.m., when he arrived at the shop in Aloha, about 16 miles from his home in Hoquiam, to 5 p.m., but frequently he worked overtime. He was also subject to call at any time and responded to calls about six times a year. He kept his own time, and that of his helpers, and reported it to the appellant. Except for special calls, with respect to which his practice varied, he did not report time spent in going to and from Aloha. It appears that industrial insurance premiums were not paid on the time spent going to and from work. The appellant operated, on regular schedule, a "crew bus" to provide transportation for its employees between their homes in the Hoquiam-Aberdeen area and Aloha. Moxley was unable to avail himself of this transportation, since he was seldom able to leave Aloha at 5 p.m. when the bus left. Before 1952, he had used his personal automobile for commuting purposes and for other purposes in connection with his employment. In that year, 1952, because he complained of having to use his own car, the appellant agreed to provide him with a pickup truck to drive to and from work and on errands.

In addition to using the pickup for his own transportation to and from work, Moxley also, during the 13 years he had the truck, provided transportation between Hoquiam and Aloha for the several mechanic helpers who worked with him during this period. Because their work hours coincided with his, these men were unable also to use the crew bus. Tate was one of these helpers.

Moxley was driving the pickup truck when the accident occurred. This truck, though paid for by the appellant, was registered in Moxley's name as "owner." The appellant was shown on the certificate of title as "lien holder." Moxley had possession of the truck at all times but used it exclusively in conjunction with his work. License fees and all gasoline and oil purchases were paid by the appellant. When repairs were made, Moxley did the work and charged the appellant for material and for his time.

The truck was insured by the appellant for its own benefit, although the proceeds of the policy, consisting only of the salvage value of what was then a 13-year-old pickup, were paid to Moxley.

The record is not clear as to the reason for this, but a possible reason is that the garage which stored the vehicle after the accident submitted its bill to Moxley.

To determine whether Moxley and Tate were in the course of their employment when injured, we must look to the relevant statute and the cases which have considered the meaning of this phrase. RCW 51.08.013 provides, insofar as pertinent here:

"Acting in the course of employment" means the workman acting at his employer's direction or in the furtherance of his employer's business . . . and it is not necessary that at the time an injury is sustained by a workman he be doing the work on which his compensation is based or that the event be within the time limits on which industrial insurance or medical aid premiums or assessments are paid.

It will be noted that the statute does not give an express answer to the question before us, but light is found upon the subject in the cases which have considered the claims of workmen in similar circumstances.

It is the general rule, relied upon by the appellant in this case, that a workman is not, under ordinary circumstances, in the course of employment while going to or from his employer's place of business. There is, however, an exception to the general rule. This exception relied upon by the respondents is that a workman is in the course of his employment while going to or from work in a vehicle furnished by his employer as an incident to his employment pursuant to custom or contractual obligation, either express or implied. *Hama Hama Logging Co. v. Department of Labor & Indus.*, 157 Wash. 96, 288 P. 655 (1930); *Venho v. Ostrander Ry. & Timber Co.*, 185 Wash. 138, 52 P.2d 1267 (1936); *Thompson v. Department of Labor & Indus.*, 10 Wn.2d 277, 116 P.2d 372 (1941); *Pearson v. Aluminum Co. of America*, 23 Wn.2d 403, 161 P.2d 169 (1945). In 8 W.

Schneider's Workmen's Compensation § 1712, at 41-42 (perm. ed. 1951), the author discusses this exception to the general rule and says of it:

> Injuries sustained by a workman "while he is provided with transportation when going to or returning from work are considered as arising out of his employment when such transportation is the result of an express or implied agreement between the employer and his workman, or when it has ripened into a custom to the extent that it is incidental to and part of the contract of employment, or when it is with the knowledge and acquiescence of the employer, or when it is the result of a continued practice in the course of the employer's business, and which practice is beneficial to both the employer and the employee." [*Nicolasi v. Sparagna*, 135 N.J.L. 131, 50 A.2d 867 (1947).]

> "While the employee is being transported by the employer pursuant to the contract of employment, it cannot be questioned they have entered upon the day's work wherein mutual duties of employer and employee are presently being performed. The pay of the employee has begun, not in wages, but in service incident to the mutual relation created by contract; his going to or from the place of work is incident to his service as per contract; the hazard of the moment is directly due to relation of employer and employee; he is at the place where he is called upon to be, where of right he may be in the performance of contractual duty." [*Jett v. Turner*, 215 Ala. 352, 110 So. 702 (1926).]

(Footnotes omitted.)

In support of its contention that the respondents were not in the course of their employment when injured, the appellant relies upon the cases of *Hama Hama Logging Co. v. Department of Labor & Indus.*, supra, and *Thompson v. Department of Labor & Indus.*, supra. In the *Hama Hama* case, the workman, Spears, was required to sleep and board at his employer's camp in the woods. The employer operated a speeder on its railroad which its employees were allowed to ride into town for recreational and other purposes. Spears was injured while riding the speeder into town on his day off, presumably for recreational purposes. This court held that Spears' privileged use of the speeder

was not an incident to his contract of employment or in the furtherance of his employer's business, but, rather, that this privilege had been afforded him solely for his own convenience. Consequently he was not in the course of his employment when injured. In reaching this conclusion, this court noted, 157 Wash. at 103, that

> [t]his is not a case wherein the employer has agreed to transport its employees to and from their work daily as a part of its contract with them.

In this connection, we commented further as follows:

> Spears did not live at Eldon. His home, to all intents and purposes, was at the camp. Had Spears lived at Eldon and, as a part of his contract of employment, the logging company supplied transportation for Spears from his home to his work and back to his home each day, the rule (with which we do not disagree) enunciated in *Swanson v. Latham,* 92 Conn. 87, 101 Atl. 492, would apply.
>
> That is, where, as a part of a contract of employment, the employer supplies a conveyance for the transportation of the employee from his home to his work and back to his home each day, the work begins when the employee boards the conveyance, and continues during the trip and during the work and on the return trip. Under such a special contract, if an injury occur [*sic*] during the transportation, the injury occurs within the period of the employment, at a place where the employee has a right to be and while he is doing something incidental to his employment because contemplated by it.
>
> "An injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment." *Swanson v. Latham,* 92 Conn. 87, 101 Atl. 492.

In the case of *Thompson v. Department of Labor & Indus., supra,* the workman, who had been hired to make motorcycle deliveries, was authorized by his employer to use the motorcycle to go home to lunch. This court held that he was not in the course of his employment when fatally injured in a collision on his way home to lunch. This permissive use of the motorcycle, we said, was for his own convenience only and was not an incident to his contract of

employment or in the furtherance of his employer's interest.

The *Hama Hama* and *Thompson* cases are readily distinguishable from the present case. As noted in the *Thompson* case, 10 Wn.2d at 284:

> "The *Hama Hama* case simply holds that a workman who is using, for his own ends, a vehicle supplied by the employer is not in the course of his employment.

In the *Hama Hama* case the workman was not returning home from work but was taking a trip for recreational purposes from the woods camp where he resided, and this court found that this excursion was not an incident to his contract of employment or in the furtherance of his employer's interest. In the *Thompson* case, there was no custom from which a contract to supply the workman with a vehicle for the purpose of going home to lunch could be inferred; nor, in the view of this court, could an obligation to furnish transportation be inferred from the permissive use of the motorcycle for this purpose.

In the present case, it is clear that it was customary for the appellant to furnish transportation to and from work for its employees who lived in the Hoquiam-Aberdeen area. It is further evident that in 1952 the appellant entered into an agreement with Moxley, who was unable because of his irregular hours to use the "crew bus," to provide him with a pickup truck to be used in commuting between work and home as well as for other uses in conjunction with his employment. It not only acquiesced in Moxley's use of the pickup for commuting purposes from 1952 until the date of the accident, but continued throughout this period to pay all expenses incurred in the operation of the truck. It was also the custom for Moxley to transport his helpers, and the evidence showed that this facilitated the performance of their work. Under these circumstances, we are of the opinion that the facts in the present case fall squarely within the rule quoted with approval by the court in the *Hama Hama* case from the case of *Swanson v. Latham,* 92 Conn. 87, 101 A. 492 (1917), and followed in the case of *Venho v.*

*Ostrander Ry. & Timber Co.*, 185 Wash. 138, 52 P.2d 1267 (1936), that

> "[a]n injury received by an employee while riding, pursuant to his contract of employment, to or from his work in a conveyance furnished by his employer, is one which arises in the course of and out of the employment."

*Hama Hama Logging Co. v. Department of Labor & Indus.*, 157 Wash. 96, 103, 288 P. 655 (1930).

In the *Venho* case, it was held that the workman was in the course of his employment when injured while returning from camp on a logging train, after work, where the evidence showed that it was customary for the company to transport employees on its logging train and that that was the only means of reaching the camp. After noting the general rule that a workman injured going to or from the place of work is not "in the course of his employment," this court said:

> There is an exception, however, as well established as the rule itself. The exception, which is supported by overwhelming authority, is this: When a workman is so injured while being transported in a vehicle furnished by his employer as an incident of the employment, he is within "the course of his employment," as contemplated by the act. In other words, when the vehicle is supplied by the employer for the mutual benefit of himself and the workman to facilitate the progress of the work, the employment begins when the workman enters the vehicle and ends when he leaves it on the termination of his labor.
>
> This exception to the rule may arise either as the result of custom or contract, express or implied. It may be implied from the nature and circumstances of the employment and the custom of the employer to furnish transportation. [Citing cases.]

*Venho v. Ostrander Ry. & Timber Co., supra,* at 139-140.

The appellant contends that the present case is distinguishable from the *Venho* case because in that case "the only way that the employee could get into the logging camp was on the employer's railroad." It would appear to be the appellant's contention in this regard that the exception stated in the *Venho* case applies only to cases where

the workman must, as a matter of actual or practical necessity, go to and from work by means of transportation furnished by his employer.

While perhaps justified by the facts in the *Venho* case, this interpretation of the exception is more narrow than this court's statement in the *Venho* case would justify. It is not in accord with the statement of the rule in the *Swanson* case quoted above, which we cited with approval in the *Hama Hama* case.

In *Pearson v. Aluminum Co. of America,* 23 Wn.2d 403, 161 P.2d 169 (1945), the defendant operated a number of buses on regular schedules for the purpose of transporting its employees to its plant and from its plant to points near their respective homes. There was no obligation on the part of the employees to use this mode of transportation, which was offered by the defendant without charge as an inducement to workmen to accept and continue employment at its plant in Vancouver, Washington. This court held that the plaintiff, who was so employed by the defendant, was in the course of his employer's business for the reason that, under these circumstances, the transportation was furnished by the employer as an incident of the employment for the mutual benefit of the employee and the employer. Thus the exception to the general rule may apply even though the furnishing of transportation is not a matter of practical necessity.

It is further argued, however, that the exception applies only when the means of transportation is operated under the direct control of the employer. This case, it is said, must be governed by the *Thompson* case, in which the vehicle was under the control of the employee, and, for this reason, is distinguishable from the *Venho* and *Pearson* cases. We disagree with such a conclusion. In the *Thompson* case, this court did not attach any significance to the distinction now urged, but based its decision on its finding that the arrangement whereby the employee drove his employer's vehicle home for lunch was not incident to the contract of employment.

We are in accord with the rule stated by the United States Supreme Court in the case of *Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 91 L. Ed. 1028, 67 S. Ct. 801 (1947), that where there is an obligation to furnish transportation, it does not matter whether the employer performs the obligation by supplying its own vehicle, hiring the vehicle of an independent contractor, making arrangements with a common carrier, reimbursing employees for the use of their own vehicles, or reimbursing employees for the cost of transportation by any means that they desire to use. In other words, where the employer has promised to provide transportation to and from work, the compensability of the injury is in no way dependent upon the method of travel which is employed.

Nor is it significant that, as the appellant points out, Moxley was not receiving any pay at the time he was injured. As was stated in the case of *Pearson v. Aluminum Co. of America, supra,* at 418, where the workman was not paid for time spent going to or coming from work, "there is plenty of authority for the rule that an injury is compensable while an employee is on his way to or from his work, even though he is not being paid for such time." It is also apparent that in the *Venho* case, the workman, who had ceased working the evening before, was not receiving any pay at the time he was injured. As the United States Supreme Court said in the *Cardillo* case, the fact that a workman is not being paid wages at the time of the accident is clearly immaterial. This is the intent of RCW 51.08.013, which provides: ". . . it is not necessary that at the time an injury is sustained by a workman he be doing the work on which his compensation is based . . ."

It is further argued that the pickup truck was owned by Moxley and not by the appellant, and that Moxley was therefore in the same position as any employee who was driving his own car home from work. We disagree. It is not clear why the pickup truck was registered in Moxley's name, or why, after the accident, the proceeds of the insurance policy were paid to him. But it is evident that in retaining legal title to the truck as registered lien holder,

and paying for its running and maintenance expenses, in licensing the pickup and insuring it for its own benefit, the appellant treated it as its own from the time it was purchased in 1952 until it was virtually demolished on April 7, 1965.

Furthermore, in permitting this use of the pickup and paying its operating and maintenance expenses while it was so used, the appellant was extending to Moxley the services it offered its other employees whose work hours enabled them to use the crew bus. The use of the pickup was furnished him, pursuant to the negotiations between Moxley and the appellant in 1952, as part of his contract of employment, to induce him to continue in his employment and this use was for the mutual benefit of the respondents and the appellant. We hold that, where there is an obligation to furnish transportation, either express or implied, it is immaterial whether the employer supplies a vehicle of his own or pays for the expense of transportation. *See Cardillo v. Liberty Mut. Co., supra.*

The fact that the respondents were not under the direct supervision of the appellant and might have gone somewhere other than home when they left the appellant's plant at Aloha is not relevant. *Pearson v. Aluminum Co. of America, supra.* Had they been engaged in some other activity when they were injured, a different question would be presented. The fact remains that they were injured while returning from work in the pickup truck which had been furnished by the appellant for this among other purposes, as an incident to their contracts of employment.

For all of the reasons above stated, we have concluded that the respondents were in the course of their employment when they sustained the injuries upon which their claims are based. The trial court did not err in sustaining the decisions of the Board of Industrial Insurance Appeals.

The appellant has raised a question which does not concern the merits of the claims but which involves the role of the Attorney General in performing his statutory duty on appeals from decisions of the Board of Industrial Insurance Appeals. It is the contention of the appellant that the At-

torney General causes embarrassment to the employer in a case of this kind because he advocates two opposing viewpoints in the course of the proceedings.

Under RCW 51.52.140, the Attorney General is the legal adviser of the Department of Labor and Industries and of the Board of Industrial Insurance Appeals. As counsel for the department and by authority of RCW 43.10.040, he represents the department in appeals taken from the decisions of the supervisor to the Board of Industrial Insurance Appeals. The department is authorized to defend its orders in such proceedings by RCW 51.52.100.

This court held in *Department of Labor & Indus. v. Cook,* 44 Wn.2d 671, 269 P.2d 962 (1954), that the department did not have the right to appeal to the superior court from an adverse decision of the board. Thereafter, in 1957, the legislature amended RCW 51.52.110, adding a proviso which gives the department the right to appeal where the board has reversed an order of the supervisor on questions of law or mandatory administrative actions of the director.

In the cases presently before the court, the Attorney General (at the board hearings) defended the orders of the supervisor. The board reversed the supervisor's decision and held in favor of the claimants. Apparently assuming that the question on appeal was one of fact rather than of law, the Attorney General determined that he was not authorized to join in the employer's appeal to the superior court. He was nevertheless required to appear on behalf of the department, inasmuch as the department is made a necessary party to appeals to the superior court under the provisions of RCW 51.52.110.

Since the appellant, who instituted the appeal to the superior court, was defending the order of the supervisor, the Attorney General apparently concluded that he could not join in the position taken by the appellant. It was apparently his theory that to argue in support of the supervisor's decision would be an act of defiance of the legislature and of the court's ruling in *Department of Labor & Indus. v. Cook, supra.* Having concluded that he was not

authorized to attack the board's order, he concluded that the only duty which he could perform was to defend it.

The appellant concedes that, since the appeals were heard by the court and not by a jury, it was not prejudiced by the Attorney General's change of posture in the superior court. Nevertheless, both the appellant and the Attorney General request that the court clarify the latter's duty in a case of this kind.

The first observation which we must make is that the question decided at all levels in the present cases is not one of fact, but rather, the facts being stipulated, is one of law. It would appear that the department was authorized to appeal, by the terms of RCW 51.52.110, and to join in an appeal by the employer.

■ But assuming that the question were one of fact, we do not think that the legislature contemplated that the Attorney General should abandon the department when appeals were taken by other parties from decisions of the board reversing orders of the supervisor.

The board is not made a party to an appeal to the superior court. Presumably the party in whose favor the board has ruled will defend its decision on the appeal. But the department is made a necessary party by RCW 51.52.110. Having given the Attorney General the duty of advising and representing the department, the legislature could have hardly intended that he should abandon the department on an appeal to the superior court, merely because the supervisor's order was reversed by the board and the department itself is not authorized to institute an appeal.

We may suppose that in the ordinary case if the department is not the appellant, it is the respondent, having prevailed before the board and the claimant having appealed. But the legislature was undoubtedly aware that there would be cases in which the board would find in favor of the claimant, reversing the department, and the employer would be the aggrieved party. If it had wished to end the department's participation in the proceedings at that point, presumably it would have included a provision to that ef-

fect in RCW 51.52.110. Instead it expressly made the department a party to appeals to the superior court by a "workman, beneficiary, employer, or other person aggrieved" by an order of the board. We can only conclude that it was the legislative policy to allow the department to defend its position upon such an appeal, even though it may not have been authorized to institute the appeal itself.

We do not mean to suggest that the Attorney General must zealously defend the position originally taken by the supervisor on an appeal of this kind. It may be that the department will, in a given case, wish to acquiesce in the decision of the board, and the Attorney General will play only a passive role before the superior court.

The Attorney General must, of course, be guided by the interests of his client in determining the extent of his participation in the appeal. We merely rule that the department remains his client, even though it is neither the appellant nor the prevailing party before the board.

The judgments in both cases are affirmed.

ALL CONCUR.