# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| JEFF and LORI MAIN, husband and wife and the marital community composed thereof, | No.  49727-1-II |
| Respondents/Cross Appellants, | |
| v. | |
| GERHARD J. SANDER and JANE DOE SANDER, husband and wife and the marital community composed thereof; and TENSAR INTERNATIONAL CORPORATION, a Georgia corporation, | UNPUBLISHED OPINION |
| Appellants/Cross Respondents. | |

WORSWICK, J. — Jeff and Lori Main (the Mains) filed a lawsuit against Gerhard J. Sander and Sander's employer, Tensar International Corporation (Tensar), for injuries resulting from a motor vehicle accident caused by Sander.  The Mains filed a motion for partial summary judgment, arguing that Tensar was vicariously liable for the accident because Sander was within the scope of his employment at the time of the accident.  The trial court granted the Mains' motion and the case proceeded to trial on the issue of damages.

Tensar appeals the trial court's order granting the Mains' motion for partial summary judgment.  Sander filed a conditional cross appeal, contending that the trial court made a number

of evidentiary errors. The Mains also filed a conditional cross appeal, arguing that the trial court erred by excluding expert testimony about the cause of Jeff's injuries.[1]

We agree with Tensar that the trial court erred when it granted partial summary judgment on the question of whether Sander was within the scope of his employment at the time of the motor vehicle accident.[2] We disagree with the arguments raised in Sander's conditional cross appeal, and we do not reach the Mains' conditional cross appeal. Thus, we reverse and remand for trial on the narrow issue of whether Sander was within the scope of his employment at the time of the accident.

FACTS

Sander is employed as a regional manager for Tensar. Sander works from his home office in Poulsbo, and he frequently attends sales meetings throughout the Pacific Northwest as part of his employment. Because Sander's employment requires frequent travel, Tensar provides Sander a monthly vehicle allowance of $500 for the cost of his vehicle and insurance. Tensar also reimburses Sander for 80 percent of all maintenance and operation expenses for his vehicle.

On April 25, 2011, Sander caused a motor vehicle accident while driving to his home. Sander failed to stop in time to avoid hitting the rear of Jeff's stopped vehicle. Sander never apprised Tensar of the accident. The Mains filed a lawsuit against Sander for damages resulting from the motor vehicle accident. Sander admitted liability for the accident.

---

[1] We use the Mains' first names when applicable to avoid confusion and intend no disrespect.

[2] Tensar also argues that the trial court abused its discretion by denying its motion to continue the summary judgment motion. Because we reverse the trial court's order granting partial summary judgment, we do not address this argument.

During discovery completed before Tensar was added as a defendant in the lawsuit, Sander stated in his deposition:

> Q: Can you tell me where you were coming from and where you were going at the time of the collision?
> A: I don't remember where I was coming from, someplace south of Poulsbo on Highway 3, but I was definitely going home.
> Q: Were you going home because you were off work? Had you worked that day?
> A: Yes.

Clerk's Papers (CP) at 93-94. Similarly, in response to an interrogatory propounded by the Mains, Sander responded, "Defendant was on his way home when the accident occurred, but does not recall where he was coming from." CP at 77. The Mains subsequently amended their complaint to include a vicarious liability claim against Tensar, alleging that Sander was acting within the scope of his employment at the time of the accident.

After the Mains filed their amended complaint, Tensar moved for summary judgment dismissal of the Mains' claims against it. In response to Tensar's motion, Sander filed a declaration stating that he was driving home from a sales meeting at the time of the motor vehicle accident and that he was returning home to his home office. Sander stated, "The only purpose I had for driving my vehicle at the time of the accident was to fulfill my employment duties." CP at 105. Sander also stated, "Tensar reimbursed me for my lunch on the day of the accident. Tensar also reimbursed me for 80% of the gas used for the trip, even though I did not purchase the gas on that day specifically." CP at 105. Sander further provided a credit card statement showing that he had purchased lunch in Tacoma on the date of the motor vehicle accident. The credit card statement also showed a purchase at a Poulsbo cinema on the date of the accident. The trial court denied Tensar's motion.

3

The Mains then filed a motion for partial summary judgment on the question of Tensar's vicarious liability, arguing that there was no genuine issue of material fact regarding whether Sander was acting within the scope of his employment at the time of the motor vehicle accident because Sander was returning to his home office from a Tensar sales meeting. The Mains attached an additional declaration of Sander's which stated, "During my deposition . . . I was asked 'Were you going home because you were off work? Had you worked that day?' to which I responded, 'Yes'. . . . My affirmative answer to those two questions was in response to the second question; 'Had you worked that day?'" CP at 309. Sander stated that he was returning to his home office and clarified that he did not intend to represent that he was finished working at the time of the accident.

Conversely, Tensar argued that Sander's deposition testimony, his answers to the Mains' interrogatories, and the credit card statement showing that he made a purchase at a cinema on the day of the accident created a genuine issue of material fact regarding whether he was within the scope of his employment at the time of the accident.

The trial court granted partial summary judgment, ruling that there was no genuine issue of material fact that Sander was acting within the scope of his employment. The case proceeded to trial regarding the damages owed to the Mains, and the jury returned a verdict for the Mains in the amount of $900,000. Tensar appeals. Sander and the Mains file conditional cross appeals.

ANALYSIS

I. SUMMARY JUDGMENT

Tensar argues that the trial court erred in granting the Mains' motion for partial summary judgment. We agree.

4

No. 49727-1-II

A.  *Legal Principles*

1. Summary Judgment

We review a trial court's order granting summary judgment de novo. *Evans v. Tacoma Sch. Dist. No. 10*, 195 Wn. App. 25, 34, 380 P.3d 553, *review denied*, 186 Wn.2d 1028 (2016). Summary judgment is appropriate when the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "A material fact is one on which the litigation's outcome depends in whole or in part." *TT Props. v. City of Tacoma*, 192 Wn. App. 238, 245, 366 P.3d 465, *review denied*, 185 Wn.2d 1036 (2016). When determining whether a genuine issue of material fact exists, we consider all the evidence and reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Evans*, 195 Wn. App. at 34. If, after viewing all of the evidence, reasonable persons could reach only one conclusion, summary judgment is proper. *Kelsey Lane Homeowners Ass'n v. Kelsey Lane Co., Inc.*, 125 Wn. App. 227, 232, 103 P.3d 1256 (2005).

2. Vicarious Liability

Under the doctrine of respondeat superior, an employer is vicariously liable for its employee's negligence in causing injuries to third parties when the employee acts within the scope of his employment. *Evans*, 195 Wn. App. at 37. Whether an employee acts within the scope of his employment depends on the facts and circumstances of the particular case and is ordinarily a question for the finder of fact. *See Michael v. Laponsey*, 123 Wn. App. 873, 874, 99 P.3d 1254 (2004).

5

An employee acts within the scope of his employment if he is "(1) engaged in the performance of duties required by his . . . employment contract or specifically directed by the employer - i.e., fulfilling his . . . job functions, or (2) engaged in the furtherance of the employer's interests." *Evans*, 195 Wn. App. at 37. An employee's conduct is outside the scope of his employment when his conduct involves a personal objective that is unrelated to the employer's business. 195 Wn. App. at 37.

Generally, an employee is not acting within the scope of his employment when he is going to or coming from his employer's place of business. *Laponsey*, 123 Wn. App. at 874. However, there is an exception to this general rule when an employee is going to or coming from work "'in a vehicle furnished by his employer as an incident to his employment pursuant to custom or contractual obligation, either express or implied.'" 123 Wn. App. at 874 (quoting *Aloha Lumber Corp. v. Dep't of Labor & Indus.*, 77 Wn.2d 763, 766, 466 P.2d 151 (1970)). An employer furnishes a vehicle to its employee when it supplies its own vehicle, hires the vehicle of an independent contractor, makes arrangements with a common carrier, reimburses the employee for the use of his own vehicle, or reimburses the employee for the cost of transportation by any means that the employer desires to use. *Aloha Lumber*, 77 Wn.2d at 772.

B. *Motion for Summary Judgment*

Tensar argues that the trial court erred in granting the Mains' motion for partial summary judgment because Sander made contradictory statements and there is a genuine issue of material fact regarding whether Sander was within the scope of his employment at the time of the motor vehicle accident. We agree.

1. Sander's Contradictory Statements

Tensar argues that the trial court erred in granting the Mains' motion for partial summary judgment because Sander's contradictory statements raised a genuine issue of material fact, which the trial court resolved. Specifically, Tensar argues that Sander's declarations directly contradicted his prior deposition testimony. We agree.

A trial court should not resolve issues of credibility on summary judgment. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991). "An issue of credibility is present only if the party opposing the summary judgment motion comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue." 117 Wn.2d at 626.

During his deposition, Sander stated that he did not remember where he was driving from but that he was driving home at the time of the motor vehicle accident. Sander was asked, "Were you going home because you were off work? Had you worked that day?" to which Sander responded, "Yes." CP at 94. Taking all facts and inferences in Tensar's favor, we assume that Sander was answering the question, "Were you going home because you were off work?" CP at 94. Additionally, in an answer to an interrogatory question, Sander disavowed remembering where he was driving from. But later, Sander submitted a declaration in which he stated that he was driving home from a sales meeting at the time of the motor vehicle accident and that he was returning home to continue working in his home office.

The sole issue on summary judgment was whether Sander was acting within the scope of his employment at the time of the motor vehicle accident. To resolve this issue, the location Sander was both coming from and driving to was critical. Viewing all facts and inferences in the

7

light most favorable to Tensar, Sander contradicted his own evidence on this material issue.
Sander first stated that he did not know where he was coming from at the time of the accident,
but he later stated that he was coming from a Tensar sales meeting.[3]  In addition, Sander initially
stated that he was going home because he was off work.  However, Sander later stated that he
was returning home to continue working.  Accordingly, the trial court erred in resolving Sander's
contradictory statements, which concerned a genuine issue of material fact, on partial summary
judgment.

    2.  Issue of Material Fact Regarding Scope of Employment

Tensar also argues that the trial court erred in granting the Mains' motion for partial
summary judgment because there is a genuine issue of material fact regarding whether Sander
was within the scope of his employment at the time of the motor vehicle accident.[4]  We agree.

Sander is employed as a regional manager for Tensar and, as part of his employment,
attends sales meetings throughout the Pacific Northwest.  Tensar provides a monthly vehicle
allowance to Sander for the cost of his vehicle and insurance.  Tensar also reimburses Sander for

---

[3] Although Sander's explanation for these contradictory statements is reasonable, a trial court
may not resolve this contradiction on summary judgment.  *Howell*, 117 Wn.2d at 626.

[4] Tensar appears to argue that there is a genuine issue of material fact regarding whether Sander
was acting within the scope of his employment at the time of the accident because Sander may
have attended a movie before the accident and, thus, may not have been within the scope of his
employment during his drive home.  Sander submitted a copy of his credit card statement to the
trial court, which showed that someone visited a cinema the day of the motor vehicle accident.
However, the credit card statement does not disclose who used the credit card, what was
purchased at the cinema, or the time at which the purchase was made.  "[S]peculation and
argumentative assertions are not sufficient to create a genuine issue of material fact."
*Hungerford v. Dep't of Corr.*, 135 Wn. App. 240, 254, 139 P.3d 1131 (2006) (citing *White v.
State*, 131 Wn.2d 1, 9, 929 P.2d 396 (1997)).  Accordingly, Tensar's argument fails.

a portion of all maintenance and operation expenses for his vehicle. During his deposition, Sander responded in the affirmative when counsel asked, "Were you going home because you were off work? Had you worked that day?" CP at 94. Sander also stated in an interrogatory answer that he could not remember where he was driving from. Later, Sander filed a declaration that provided that he was driving home from a sales meeting when he caused the accident with Jeff's vehicle. Sander also stated that he was returning home to continue working in his home office.

For Sander to be acting within the scope of employment at the time of the motor vehicle accident, he must have been coming from or driving to work in a vehicle furnished by Tensar and engaged in furthering the interests of Tensar. *See Evans*, 195 Wn. App. at 37; *see also Laponsey*, 123 Wn. App. at 874. But as discussed above, Sander provided contradictory statements concerning the location he was driving from and whether he was finished working. Viewing the evidence in the light most favorable to Tensar, it is unclear whether Sander was returning home from a Tensar sales call at the time of the accident. It is also unclear whether Sander was returning home to continue working for Tensar. As a result, there is a genuine issue of material fact concerning whether Sander was acting within the scope of his employment at the time of the accident. Accordingly, the trial court erred in granting the Mains' motion for partial summary judgment.

CONDITIONAL CROSS APPEALS

Sander characterizes his cross appeal as conditional, stating that we need not address his issues on cross appeal unless we reverse the trial court's order granting the Mains' motion for partial summary judgment and remand for further proceedings. Because we reverse the trial

9

court's order granting the Mains' motion for partial summary judgment, we address Sander's cross appeal.[5]

ADDITIONAL FACTS INVOLVING SANDER'S CONDITIONAL CROSS APPEAL

After the motor vehicle accident, Jeff was diagnosed with a grade 2 or 3 concussion. The concussion caused moderate brain damage and significant impairment, which decreased Jeff's cognitive proficiency and negatively affected his work productivity. A neuropsychologist predicted that Jeff's brain damage would worsen over time.

During discovery, the Mains provided a declaration by Sean Updegrove. Updegrove was a vice president of Denali Advanced Integration (Denali), and he stated that he hired Jeff on a contract basis with the intent to hire him for a full-time position. Updegrove stated that the full-time position had an annual salary of $150,000 and a $20,000 bonus each year. Updegrove also stated that Jeff's work performance was noticeably different after the motor vehicle accident and that, due to Jeff's poor work performance, he decided to terminate him from the contract position and did not hire him for the full-time position.

The Mains also retained David Knowles, an economist, to offer testimony about Jeff's economic damages. During his deposition, Knowles noted that he relied on Updegrove's statement when calculating Jeff's lost wages. Knowles also stated that he used the $170,000 total annual salary in his calculations. While preparing for the Mains' lawsuit, the Mains'

---

[5] The Mains also characterize their cross appeal as conditional. At oral argument, the Mains stated that we need not address their argument on cross appeal unless we both remand for further proceedings concerning whether Sander was acting within the scope of his employment and remand for a new trial on the issue of damages. Because we do not remand for a new trial on the issue of damages, we do not address the Mains' cross appeal.

counsel sent Knowles an e-mail that read, "By the way—delete this email. ☺."[6] Suppl. CP at 675. Knowles did not delete the e-mail and it was disclosed to both Sander and Tensar.

After the trial court granted the Mains' motion for partial summary judgment, the case proceeded to a jury trial concerning the damages owed to the Mains for Jeff's pain and suffering, loss of enjoyment of life, and economic loss, as well as Lori's loss of consortium. Before trial, the parties filed a number of motions in limine.

Tensar filed a motion in limine to exclude evidence of Jeff's potential job offer at Denali and Knowles's wage loss calculations based on that potential job. Sander joined in the motion. Tensar and Sander argued that evidence of a potential job, and the lost wages calculations associated with it, were speculative. The trial court determined that Updegrove's testimony provided adequate foundation to support Knowles's opinion regarding Jeff's lost wages and economic damages, and it denied the motion in limine.

The Mains filed a motion in limine to exclude references to the e-mail between the Mains' counsel and Knowles, arguing that the e-mail was irrelevant. Sander contended that the e-mail was relevant to show the Mains' counsel and Knowles's familiar relationship and Knowles's potential bias. The trial court granted the Mains' motion in limine, determining that the e-mail could not be presented directly to Knowles to suggest bias because the prejudicial value of the e-mail far outweighed any relevance of the correspondence. The trial court permitted the parties to introduce a redacted version of the e-mail at trial that omitted the "By the way—delete this email. ☺" notation. *See* Suppl. CP at 674.

---

[6] The e-mail at issue is not part of the record on appeal.

Sander also filed a motion in limine to exclude any testimony referring to or suggesting the Mains' religious affiliation or place of worship under ER 610. The Mains argued that Lori should be permitted to testify about receiving counseling from her pastor after Jeff's motor vehicle accident because the evidence was relevant to her loss of consortium claim. The trial court granted Sander's motion in limine in part, stating that Lori could refer to receiving counseling from her pastor and relying on her faith.

The trial court entered additional orders in limine that prohibited the parties from referring to insurance coverage and that prohibited Tony Choppa, a vocational rehabilitation counselor, from testifying about his work with veterans.

At trial, Jeff testified that he called his insurance company after the motor vehicle accident. Sander did not object. Jeff also testified that he visited a number of medical professionals after the accident. Jeff stated that he visited a particular medical professional because his visits were covered by his health insurance. Sander did not object.

Richard Perrillo, a forensic neuropsychologist, testified that he completed a clinical internship with Vietnam War veterans. Sander did not object. Perrillo also stated that he conducts neurological testing on patients, including veterans, as part of his employment. Sander objected, arguing that Perrillo's testimony violated an order in limine. The trial court noted that it had not ruled on whether Dr. Perrillo could testify about his work with veterans. However, the court instructed Perrillo that he could not testify about his work with veterans and instructed the jury to disregard Perrillo's statement.

The Mains made an offer of proof concerning how Jeff's treating neurologist, Dr. Edward Tay, would testify. Jeff visited Dr. Tay approximately one year after the motor vehicle accident. Dr. Tay stated that he diagnosed Jeff with post-concussion disorder after reviewing Jeff's self-report of his symptoms, his medical history and records, and his physical examination. Dr. Tay determined that the motor vehicle accident caused Jeff's post-concussion disorder because the accident was Jeff's only history of trauma. Sander objected to Dr. Tay's testimony, arguing that Dr. Tay lacked the foundation to testify that the accident caused Jeff's concussion because Dr. Tay's diagnosis was based on Jeff's self-report of his injuries and symptoms and the diagnosis of another medical professional, which was contained in Jeff's medical records. The trial court overruled Sander's objection. Dr. Tay testified consistent with his offer of proof.

The jury found that Sander's and Tensar's conduct proximately caused the Mains' injuries. The jury awarded Jeff $150,000 in economic damages and $550,000 in noneconomic damages and awarded Lori $200,000 for loss of consortium.

## ANALYSIS

On cross appeal, Sander argues that the trial court erred by (1) admitting speculative evidence regarding Jeff's potential job offer and related wage loss calculations, (2) granting the Mains' motion in limine to exclude a portion of the Mains' counsel's e-mail correspondence with one of the Mains' expert witnesses, (3) permitting Lori to testify about relying on her faith and receiving counseling from her pastor, and (4) depriving Sander of a fair trial because the Mains' witnesses repeatedly violated the trial court's orders in limine, and (5) admitting Dr. Tay's testimony regarding his diagnosis and the cause of Jeff's concussion. We disagree.

## I. Testimony About Future Employment

Sander argues that the trial court erred by admitting speculative evidence regarding Jeff's potential job offer and the wage loss calculation that arose from the potential job. We disagree.

We review a trial court's decision to admit evidence for an abuse of discretion. *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668, 230 P.3d 583 (2010). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. 168 Wn.2d at 669.

An expert may base an opinion or inference upon facts or data "perceived by or made known to the expert at or before the hearing." ER 703. An expert's opinion must have an adequate factual basis. *Miller v. Likins*, 109 Wn. App. 140, 148, 34 P.3d 835 (2001). Conclusory or speculative expert opinions that lack an adequate foundation will not be admitted. 109 Wn. App. at 148.

Updegrove declared that he planned to hire Jeff for a new position. The new position would pay $150,000 each year, with an expected bonus of $20,000 each year. Updegrove stated that he did not hire Jeff for the position because Jeff had difficulty completing his tasks after the motor vehicle accident. Knowles based his calculation of Jeff's economic loss on Updegrove's statement that he planned to hire Jeff for a position that paid $170,000 total each year.

Neither Updegrove's statement nor Knowles's calculation was based on speculation. Updegrove plainly stated that he planned to hire Jeff but that he decided not to because Jeff's performance declined after the motor vehicle accident. Updegrove's statement that he planned to hire Jeff in a position that paid $170,000 a year provided adequate foundation to support Knowles's wage loss calculations. That the calculations were based on a potential future job

goes to the weight of the calculations, and not its admissibility. Accordingly, the trial court's

decision to admit this evidence was based on tenable grounds. Thus, the trial court did not abuse

its discretion.

## II. THE MAINS' COUNSEL'S E-MAIL TO AN EXPERT WITNESS

Sander also argues that the trial court erred by excluding a portion of the Mains'

counsel's e-mail correspondence with one of the Mains' expert witnesses, Knowles.

Specifically, Sander argues that the e-mail supported his theory at trial that the Mains' counsel

"was orchestrating the alleged damages in this case" that the e-mail was relevant to show

Knowles's bias. Br. of Co-Appellant Sander at 16. We disagree.

As discussed above, we review a trial court's decision to exclude evidence for an abuse

of discretion. *Salas*, 168 Wn.2d at 668. To be admissible, evidence must be relevant. ER 402.

Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence." ER 401. Relevant evidence may be excluded when its probative value is

substantially outweighed by the danger of unfair prejudice. ER 403.

Here, the trial court excluded a portion of an email between the Mains' counsel and

Knowles that stated, "By the way—delete this email. ☺."[7] Suppl. CP at 675. The trial court

---

[7] During Knowles's deposition, the following exchange took place:

Q:    Okay. Did [the Mains' counsel] instruct you to delete his e-mails?
A:    With a funny face.
Q:    So what does—
A:    That means he was being funny.
. . . .

determined that any relevance of the e-mail notation was far outweighed by its prejudicial value, and the court admitted a redacted version of the e-mail, omitting the "delete this email" language. *See* Suppl. CP at 675.

The probative value of the e-mail correspondence was relatively low because opposing counsel had the opportunity to question Knowles about his relationship with the Mains' counsel and his bias during cross-examination. And the e-mail correspondence carried a potential for unfair prejudice because it could suggest to the jury that the Mains' counsel was not forthcoming and was attempting to destroy evidence. Accordingly, the e-mail notation was inadmissible under ER 403 because its probative value was substantially outweighed by the danger of unfair prejudice. The trial court's decision to exclude the evidence was based on these legitimate considerations and, therefore, was based on tenable grounds. Accordingly, the trial court did not abuse its discretion in granting the Mains' motion to exclude the e-mail correspondence.

### III. TESTIMONY REGARDING LORI'S "RELIANCE ON FAITH"

Sander also argues that the trial court erred in permitting Lori to testify about relying on her faith and receiving counseling from her pastor after Jeff was injured in the motor vehicle accident because such testimony is inadmissible under ER 610. We disagree.

---

> Q: So we're clear, you didn't think that [the Mains' counsel] was instructing you to actually delete his e-mail, correct?
> A: No.
> Q: Okay. And you knew that as an expert you needed to save his correspondence as part of your file, correct?
> A: Well, that's true, because that's why you have it. And in addition to the fact, I know that—I don't know that. My presumption was, sometimes we get a little bit humorous and maybe we shouldn't. That's what happened here.

Suppl. CP at 721.

16

We review a trial court's decision to admit evidence for an abuse of discretion. *Salas*, 168 Wn.2d at 668. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. 168 Wn.2d at 669.

Under ER 610, evidence of the beliefs of a witness on matters of religion is not admissible for the purpose of showing that, by reason of her nature, the witness's credibility is impaired or enhanced. "While the rule is usually thought of as preventing impeachment by evidence of religious beliefs or a lack thereof, the rule also works in reverse. A witness is not permitted to cite religious convictions for purposes of enhancing his or her own credibility." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 610.2, at 524 (6th ed. 2016).

Here, the trial court ruled that Lori could refer to receiving counseling from her pastor and relying on her faith to the extent that it related to her loss of consortium claim. Our review of the record reveals that the Mains offered Lori's testimony that she received counseling from her pastor and relied on her faith to support her damages claim for loss of consortium claim. This testimony does not appear to have been offered or used to enhance Lori's credibility. Because references to counseling and Lori's reliance on her faith were not offered to enhance Lori's credibility, the evidence was not prohibited by ER 610. As a result, the trial court's decision to permit Lori to testify about relying on her faith was based on tenable grounds and reasons. Accordingly, the trial court did not abuse its discretion.

17

IV. Violations of Motions in Limine

Sander also argues that he was deprived of a fair trial because the Mains' witnesses repeatedly violated the trial court's orders in limine by referring to insurance coverage and work with veterans. Sanders's arguments fail.

We generally do not consider arguments raised for the first time on appeal. RAP 2.5(a); *Kave v. McIntosh Ridge Primary Rd. Ass'n*, 198 Wn. App. 812, 823, 394 P.3d 446 (2017). Moreover, deliberate disregard of an order in limine does not warrant a new trial when the violation does not prejudice the jury. *Aluminum Co. of Am. v. Aetna Cas. & Surety Co.*, 140 Wn.2d 517, 540-41, 998 P.2d 856 (2000); *see State v. Sullivan*, 69 Wn. App. 167, 173, 847 P.2d 953 (1993). Where a party prevails on a motion in limine and later suspects a violation of the court's ruling, the party has a duty to bring the violation to the attention of the court and allow the court to determine what remedy, if any, to direct. *A.C. ex rel. Cooper v. Bellingham Sch. Dist.*, 125 Wn. App. 511, 525, 105 P.3d 400 (2004). The complaining party must object to give the trial court the opportunity to cure any potential prejudice and to preserve the issue for appeal. *Sullivan*, 69 Wn. App. at 171.

A.      *Testimony Regarding Insurance Coverage*

Sander argues that the he was deprived of a fair trial because Jeff violated the trial court's order in limine by referring to his insurance coverage. We do not review Sander's argument.

Before trial, the trial court entered an order in limine that prohibited the parties from referring to insurance coverage. At trial, Jeff testified that he called his insurance company after the motor vehicle accident. Sander did not object. Later, Jeff testified that he visited a particular medical professional because she was covered by his health insurance. Sander did not object.

18

Sander failed to object to Jeff's violations of the trial court's order in limine. As a result, Sander did not give the trial court the opportunity to cure any potential prejudice resulting from Jeff's testimony. Because Sander failed to raise this issue below, and because this violation does not appear to have been a deliberate violation of the court's order in limine, we do not review Sander's argument on appeal.

B.      *Testimony Regarding Work with Veterans*

Sander also argues that he was deprived of a fair trial because Perrillo violated the trial court's order in limine by referring to his work with veterans. We disagree.

The trial court entered an order in limine that prohibited Choppa from testifying about his work with military veterans. But Sander did not file a motion in limine to exclude Perrillo's testimony regarding his work with veterans. At trial, Perrillo testified that he completed a clinical internship with Vietnam War veterans. Sander did not object.

Later during the trial, Perrillo stated that that he conducts neurological testing on patients, including veterans, as part of his employment. Sander objected, arguing that Perrillo's testimony violated an order in limine. The trial court noted that it had not ruled on whether Perrillo could testify about his work with veterans before trial, but nonetheless instructed Perrillo that he could not testify about his work with veterans. The trial court also instructed the jury to disregard Perrillo's statement that he conducted neurological testing on veterans.

Perrillo's testimony regarding his work with veterans did not violate the trial court's order in limine because the trial court had not ruled on whether Perrillo's work with veterans would be admissible. Moreover, the trial court instructed the jury to disregard Perrillo's testimony that he worked with veterans. Sander's argument fails.

19

V. Dr. Tay's Testimony Concerning Concussion Diagnosis & Causation

Sander also argues that the trial court erred in admitting Dr. Tay's testimony regarding Jeff's concussion and the cause of the concussion because Dr. Tay's testimony lacked the necessary foundation. Specifically, Sander argues that Dr. Tay lacked the foundation to testify because he did not make his own diagnosis and impermissibly relied on Jeff's self-report of his symptoms. We disagree.

The decision whether to admit expert testimony is within the broad discretion of the trial court. *Salas*, 168 Wn.2d at 668; *Miller*, 109 Wn. App. at 147. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. *Salas*, 168 Wn.2d at 669.

An expert may base an opinion or inference upon facts or data "perceived by or made known to the expert at or before the hearing." ER 703. An expert's opinion must have an adequate factual basis. *Miller*, 109 Wn. App. at 148. A physician may base a diagnosis upon information from a number of sources, including statements by the patient, reports and opinions by other medical professionals, and hospital records. *In re Pers. Restraint of Young*, 122 Wn.2d 1, 57-58, 857 P.2d 989 (1993); *see Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 610, 260 P.3d 857 (2011).

At trial, Dr. Tay diagnosed Jeff with post-concussion disorder based on Jeff's self-report of his symptoms, medical history, physical, and medical records. Dr. Tay also stated that he determined that Jeff's post-concussion disorder was caused by the motor vehicle accident because it was Jeff's only history of trauma. Jeff's medical history included a concussion

diagnosis from another medical professional who saw Jeff shortly after the motor vehicle accident.

The trial court's decision to admit Dr. Tay's testimony regarding Jeff's concussion diagnosis and the cause of Jeff's concussion was based on tenable grounds and reasons. Dr. Tay testified that his diagnosis was based upon a number of sources, including his own examination of Jeff, as well as his review of Jeff's medical records, including another medical professional's prior concussion diagnosis in Jeff's medical history. Dr. Tay's testimony was based on facts and data that he perceived and was not speculative. Accordingly, adequate foundation supported Dr. Tay's testimony, and the trial court did not abuse its discretion in admitting the testimony.

## ISSUES ON REMAND

We turn now to the issues to be decided on remand. Issues on remand should be limited where "'the original issues were distinct and separate from each other and . . . justice does not require the resubmission of the whole case to the jury.'" *Dexheimer v. CDS, Inc.*, 104 Wn. App. 464, 477, 17 P.3d 641 (2001) (quoting *Keegan v. Grant County Pub. Util. Dist. No. 2*, 34 Wn. App. 274, 285, 661 P.2d 146 (1983)). A new trial can also be limited to the issue of liability when there is no serious challenge to the damages awarded. 104 Wn. App. at 477.

Although the trial court erred in granting the motion for partial summary judgment, the issues of Tensar's vicarious liability and the Mains' damages are separate and distinct. Under all of the circumstances here, the interests of justice are best served by limiting the new trial to the issue of whether Sander was acting within the scope of his employment at the time of the accident.

21

No. 49727-1-II

CONCLUSION

We reverse the trial court's order granting the Mains' motion for partial summary judgment and remand for trial on the sole issue of whether Sander was acting within the scope of his employment at the time of the motor vehicle accident.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, C.J.

Lee, J.