[No. 56642-9.   En Banc.   October 31, 1991.]

VIRGIL T. HOWELL, ET AL, *Appellants*, v. SPOKANE &
INLAND EMPIRE BLOOD BANK, ET AL,
*Respondents*.

*John P. Lynch*, for appellants Howell.

*Randall & Danskin, P.S.*, by *Michael J. Myers* and *Keith D. Brown*, for respondent Spokane & Inland Empire Blood Bank.

*Paine, Hamblen, Coffin, Brooke & Miller*, by *John C. Riseborough*, for respondents John and Jane Doe X.

*Bryan P. Harnetiaux* and *Robert H. Whaley* on behalf of Washington State Trial Lawyers Association, amicus curiae for appellants.

*Heather Houston* and *Sam Pailca* on behalf of Washington Defense Trial Lawyers Association; *Kenneth A. Letzler, Karen S. Wagner, Karen Shoos Lipton, Steven Labensky*, and *David M. Jacobi* on behalf of the American National Red Cross, American Association of Blood Banks, and Council of Community Blood Banks; *Robert J. Rohan* on behalf of The Northwest AIDS Foundation; *Stephen K. Causseaux, Jr.*, on behalf of Tacoma-Pierce County Health Department; *Andrew K. Dolan* on behalf of the Washington State Medical Association, amici curiae for the blood banks.

DORE, C.J. — Blood recipient Virgil Howell (Howell)[1] appeals the trial court's summary judgment order dismissing his claims against a donor (John Doe X) of allegedly HIV-positive blood transfused into him. Howell also appeals a discovery order providing that the donor's identifying information be kept confidential until greater need could be demonstrated and one providing that Howell be allowed to take only an anonymous, videotaped deposition of John Doe X rather than a face-to-face deposition. We affirm.

## FACTS

The facts relevant to this appeal are as follows. On October 1, 1984, before blood screening tests for AIDS were available, John Doe X made a voluntary blood donation at respondent Spokane and Inland Empire Blood Bank (SIEBB). At that time, SIEBB was routinely asking donors to self-screen and to refrain from donating blood if they were members of any high-risk group, which groups SIEBB identified to donors.

---

[1] "Howell" will be used to refer to both Virgil Howell and his wife, who has joined in this action.

On October 8, 1984, appellant Virgil Howell received two units of blood at Deaconess Medical Center. The blood was provided to Deaconess by SIEBB. One of the units had been provided to SIEBB by John Doe X.

Two years later, in August of 1986, John Doe X again donated blood. At that time, blood screening tests were available to detect antibodies to the HIV virus, which is known to cause AIDS. John Doe X's donation was tested and found to contain such antibodies, and SIEBB notified John Doe X of the test results. Both John Doe X and Howell presently test seropositive.[2]

On December 4, 1987, Howell sued SIEBB, John Doe X, and others on a number of theories. On August 5, 1988, before John Doe X appeared in the action, the trial judge ruled orally that SIEBB must disclose John Doe X's identity. John Doe X then appeared and moved for reconsideration of the order. The trial judge reversed and ruled that discovery could proceed through interrogatories, requests for production of documents, and depositions upon written questions, but the identity of John Doe X would remain confidential. If the initial round of discovery indicated a need for disclosure of John Doe X's name, a motion for disclosure could be brought at that time. If disclosure of John Doe X's identity was indicated, it would be provided to only one of Howell's counsel and to no one else absent

---

[2]There are three gradations of HIV infection. The first is seropositivity, which means one has tested positive for the presence of antibodies to the virus but is asymptomatic. Seropositive carriers appear totally healthy but are capable of transmitting the virus and are vulnerable to developing AIDS. The second is AIDS-related complex (ARC), which is a lesser form of AIDS; it is infectious but not life threatening. The final gradation is AIDS, which to this date is always fatal. Comment, *Blood Donation: A Gift of Life or a Death Sentence?*, 22 Akron L. Rev. 623, 626-27 (1989).

For every person with AIDS, there are probably 60 to 70 seropositive healthy carriers. 22 Akron L. Rev. at 623, 626 (citing Comment, *The Constitutional Implications of Mandatory Testing for Acquired Immunodeficiency Syndrome — AIDS*, 37 Emory L.J. 217 (1988)). Of these healthy carriers, researchers estimate that 5 to 30 percent will develop AIDS over the next 5 to 7 years. 22 Akron L. Rev. at 623, 626 (citing Note, *AIDS: Legal Issues in Search of a Cure*, 14 Wm. Mitchell L. Rev. 575, 586-87 (1988)).

court order. None of John Doe X's relatives or acquaintances could be contacted without court order. Finally, John Doe X's identity would not be placed in the record of the court until after a final judgment was obtained.

Following the entry of this order, Howell was provided 10 years' worth of John Doe X's and his wife's medical records and their dental records. Howell has deposed John Doe X's wife, his treating physician, and a physician who has counseled John Doe X. John Doe X has also answered 19 interrogatories propounded to him by Howell and 80 by SIEBB. Although John Doe X desired to have his deposition taken by written question, Howell was allowed to conduct a videotaped deposition with John Doe X's face obscured so Howell and his counsel could observe John Doe X's body language. This deposition lasted 5 hours. John Doe X testified that he is not a member of a high-risk group, and that his alleged exposure to the AIDS virus must have happened during a separation from his wife in 1982, during which period he had vaginal sex with one woman three times. John Doe X's physician testified that the likelihood of a casual heterosexual contact resulting in the transmission of AIDS is remote.

John Doe X also testified that before he made the 1984 blood donation, he read a handout given him by SIEBB entitled "*An Important Message to All Blood Donors*". This handout identified high-risk groups and asked members of those groups to refrain from donating blood. A copy of John Doe X's donor card, which lists, among other things, his weight, blood pressure, and pulse was produced by SIEBB. However, the medical questionnaire that is routinely given to donors was not produced because SIEBB claimed it was unavailable.

On October 12, 1989, the trial judge granted summary judgment of dismissal of Howell's claims against John Doe X for negligence, res ipsa loquitur, negligent infliction of emotional distress, outrage, assault, and loss of consortium. Howell appeals the entry of this summary judgment,

the order preventing John Doe X 's face-to-face deposition, and the discovery order preventing disclosure of John Doe X 's identity.

ANALYSIS

I

■ We begin our analysis by noting that Howell's brief suffers from the same flaw that plagued him on his earlier appeal: although he makes numerous assignments of error, not all are supported by legal argument and authority. If a party fails to support assignments of error with legal arguments, they will not be considered on appeal. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990); *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 46, 785 P.2d 815 (1990 (*Howell* I). Howell assigns error to the trial court's grant of summary judgment dismissing Howell's claims of negligence, res ipsa loquitur, negligent infliction of emotional distress, outrage, assault, and loss of consortium. However, he discusses only the negligence claim, and that only in his reply brief. Thus, we will not address these other claims on this appeal, and the summary judgment is affirmed to the extent it dismisses claims other than negligence.

II

■ On a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (citing *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975)). A moving defendant may meet this burden by showing that there is an absence of evidence to support the nonmoving party's case. 112 Wn.2d at 225 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). John Doe X provides a detailed discussion of each cause of action raised by Howell and the lack of evidence to support it. However, because we have disposed of Howell's other causes of action, we will focus only on his claim of negli-

gence. John Doe X has met his initial burden with respect to Howell's negligence claim.

■ After this showing is made, the burden shifts to the party with the burden of proof at trial, the plaintiff. The plaintiff must come forward with evidence sufficient to establish the existence of each essential element of its case. If this showing is not made:

> [T]here can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

112 Wn.2d at 225 (quoting *Celotex*, 477 U.S. at 322-23). In that case, a summary judgment is properly granted.

■ Thus, after John Doe X made his initial showing, Howell's burden was to come forward with evidence to establish the existence of each essential element of his negligence claim. One element Howell must establish is John Doe X's breach of a duty to refrain from donating blood in 1984. *See Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 73, 684 P.2d 692 (1984). However, such a duty arose, if at all, only if John Doe X knew or should have known of his seropositivity at the time of the donation. *See, e.g., Berner v. Caldwell*, 543 So. 2d 686, 689-90 (Ala. 1989); *see generally* Comment, *AIDS — Liability for Negligent Sexual Transmission*, 18 Cum. L. Rev. 691 (1987-1988).

Howell has presented absolutely no evidence that John Doe X knew or should have known of his seropositivity when he donated blood in 1984. The only evidence offered on this issue is from John Doe X himself. He supported his summary judgment motion with his own and his counsel's affidavits, deposition testimony of Dr. Collins and Dr. Lehman, and by his responses to interrogatories promulgated by SIEBB and Howell. The gist of this evidence was that John Doe X was not a member of a high-risk group at the time of the donation and truthfully answered the questions asked him by the blood bank staff, he has never shown any

signs or symptoms of AIDS, and he did not know of his seropositivity at the time of the donation. This evidence went completely uncontradicted by Howell and, in fact, Howell's counsel conceded at oral argument Howell's inability to prove John Doe X's knowledge of his seropositivity at the time of the blood donation.

Because of Howell's failure to come forward with evidence on an essential element of his case, we would normally decide at this point that the summary judgment was properly granted by the trial court. However, Howell nevertheless claims that summary judgment was improperly granted because: (1) he raised an issue as to John Doe X's credibility; and (2) the facts about John Doe X's knowledge or lack thereof were completely within John Doe X's control and he had no access to them. With respect to this second claim, Howell apparently argues he could have presented evidence to withstand the motion had he been given access to John Doe X's name. We will address these arguments.

### III

Howell contends the summary judgment was improperly granted because he raised an issue of fact regarding John Doe X's credibility. Howell points to the fact that John Doe X had sex with a woman while separated from his wife, he did not immediately disclose his seropositive test results and a herpes zoster (shingles) diagnosis to his wife, and he never informed his dentist of the HIV-test results.

■ This argument is not convincing. It is true that a court should not resolve a genuine issue of credibility at a summary judgment hearing. *Amend v. Bell*, 89 Wn.2d 124, 129, 570 P.2d 138, 95 A.L.R.3d 225 (1977). An issue of credibility is present only if the party opposing the summary judgment motion comes forward with evidence which contradicts or impeaches the movant's evidence on a material issue. *Dunlap v. Wayne*, 105 Wn.2d 529, 536-37, 716 P.2d 842 (1986). A party may not preclude summary

judgment by merely raising argument and inference on collateral matters:

> [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and that the opposing party may not merely recite the incantation, "Credibility," and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Amend*, 89 Wn.2d at 129 (plaintiff did not raise an issue of credibility about defendant's testimony regarding the scope of his employment by arguing that there were weaknesses in his testimony concerning speed and intoxication) (quoting *Rinieri v. Scanlon*, 254 F. Supp. 469, 474 (S.D.N.Y. 1966)).

Howell's attempts to portray John Doe X as generally untrustworthy do not raise an issue of credibility as to a material fact. John Doe X has offered evidence that he did not have reason to believe he should not be donating blood in 1984. Howell has presented no facts inconsistent with this evidence. *See Dunlap*, 105 Wn.2d at 536-37 (suggested inference does not qualify as evidence). When or if John Doe X told his wife or dentist of his seropositive test results is irrelevant. This argument is without merit.

## IV

Howell argues alternatively that summary judgment was improperly granted because the facts regarding John Doe X's state of mind at the time he donated blood are uniquely within John Doe X's control.

■ A party appealing a summary judgment because he has allegedly not been permitted to conduct adequate discovery must indicate what relevant evidence he expects the additional discovery would provide. In other words, he must prove that he has been prejudiced by the summary judgment order. *See Parish v. Howard*, 459 F.2d 616, 619-20 (8th Cir. 1972); *see also Illinois State Employees Union, Coun. 34 v. Lewis*, 473 F.2d 561, 565 n.8 (7th Cir.

1972) (citing *Washington v. Cameron*, 411 F.2d 705, 711 (D.C. Cir. 1969) (although party opposing summary judgment motion must be permitted ample discovery, it is incumbent on such party to demonstrate that inquiry is directed toward establishing material facts and that, upon receipt of such facts, he will be armed to defend against motion)), *cert. denied*, 410 U.S. 928 (1973).

Howell has failed to demonstrate that he was in any way prejudiced in his discovery by not knowing John Doe X's true identity. At the time he sought disclosure of John Doe X's identity, Howell had already been permitted to conduct extensive discovery. By the time the summary judgment motion was set for hearing, Howell had obtained over 10 years' worth of John Doe X's and his wife's medical records and their dental records. He had deposed John Doe X for over 5 hours, and he had also deposed John Doe X's wife, his treating physician, Dr. Collins, and Dr. Lehman, who had counseled John Doe X. John Doe X had answered 19 interrogatories propounded by Howell and 80 interrogatories propounded by SIEBB.

Even with this extensive discovery, however, Howell was unable to uncover a scintilla of evidence indicating that John Doe X donated blood at a time when he should have known not to. He still has not indicated what relevant evidence he expects to discover if allowed access to John Doe X's name and, thus, has not established that he has been prejudiced by the trial court's order. In sum, Howell's argument that summary judgment was improperly granted because he was denied the opportunity to conduct full discovery is without merit.

Donor John Doe X has a significant interest in avoiding intrusion into his private life. Because the HIV virus is known to be transmitted through sexual contact, intravenous drug use, and blood transfusions, Howell would undoubtedly wish to ask highly personal questions of John Doe X's relatives, friends, co-workers, and others.

In addition, persons associated with AIDS are known to suffer discrimination in employment, education, housing, and even medical treatment. *See Rasmussen v. South Fla. Blood Serv., Inc.*, 500 So. 2d 533, 537, 56 A.L.R.4th 739 (Fla. 1987).

Blood recipient Howell has a legitimate interest in being compensated for his injuries. Howell is an asymptomatic carrier of the virus, who may never develop the disease. However, he must continue to live with the knowledge that he may someday develop AIDS and suffer a terrible death from the disease.

■ Under CR 26(c), a judge is given broad discretion in fashioning discovery orders in order to protect a person's privacy. The trial judge did so here by allowing limited disclosure of the donor's name subject to a strict confidentiality order. The confidentiality order will expire only if the judge determines, after further discovery, that the recipient has made a prima facie case of the donor's negligence. At this point, discovery is just beginning.

■ At this point in the proceedings, Howell is not entitled to discover John Doe X's identity. As already discussed, Howell has failed to demonstrate that he was in any way prejudiced by the trial court order denying him access to donor John Doe X's true identity. The trial court has permitted Howell to undertake extensive discovery and Howell still has not come forward with any evidence of John Doe X's negligence. Moreover, the discovery order of the trial court is reviewable only for an abuse of discretion, *see State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1191 (1990) (no abuse of discretion unless no reasonable person would have decided the way the judge did).

The trial court in the instant case foresaw a "fishing expedition" and protected the donor by requiring a greater showing of entitlement before allowing discovery of the donor's name. When Howell was unable to make this showing, his case was dismissed. We cannot say the

discovery order or the summary judgment was improperly granted. The trial court did not abuse its discretion in refusing Howell's discovery request.

## V

The final argument Howell makes is that the trial court erred by ordering the videotaped deposition of John Doe X with his face obscured, instead of the face-to-face deposition requested by Howell. This argument is also without merit. As we have already noted, the trial court has broad discretion to fashion discovery orders, and these orders are reviewable only for an abuse of discretion. *See* CR 26(c); *Progressive Animal Welfare Soc'y v. UW,* 114 Wn.2d 677, 688-89, 790 P.2d 604 (1990).

The order of the trial court accommodated both Howell's stated interest in observing John Doe X's "body language" and John Doe X's privacy interest. Moreover, there is no evidence that John Doe X's testimony would have revealed anything more had he not been blindfolded. This order was within the trial court's discretion.

### CONCLUSION

We affirm. Howell's attempt to raise an issue as to John Doe X's credibility is without merit. He has not indicated what evidence he believes he could uncover if permitted disclosure of John Doe X's identity. In light of the extensive discovery Howell has already performed, it was incumbent upon him to demonstrate that disclosure of John Doe X's identity would enable him to defend against the summary judgment motion. This he did not do.

The summary judgment and discovery orders are affirmed.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, and SMITH, JJ., and CALLOW, J. Pro Tem., concur.

ANDERSEN, J., concurs in the result.

Reconsideration denied February 28, 1992.