## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| RUTH 2, LLC, | No.  50458-8-II |
| Appellant, | UNPUBLISHED OPINION |
| v. | |
| SOUND TRANSIT and CITY OF TACOMA, | |
| Respondents. | |

BJORGEN, J. — Ruth 2 LLC (Ruth 2) appeals the trial court's order granting summary judgment in favor of Sound Transit and the City of Tacoma and dismissing its tort and inverse condemnation claims.

Ruth 2 argues that the two year statute of limitations, covering actions for relief not otherwise provided for, does not apply to its claim that Sound Transit's negligence in carrying out improvements on adjacent property caused flooding that damaged Ruth 2's real property.  As such, Ruth 2 contends that the trial court erred in dismissing its tort claims.  Ruth 2 also argues that the claim filing requirements found in chapter 4.96 RCW should not work to bar its cause of action because it substantially complied with the statute.  Ruth 2 next argues that it established a prima facie case of inverse condemnation, and the common enemy doctrine should not preclude its claim of inverse condemnation.

We hold that the two year statute of limitations applies and that it bars all of Ruth 2's tort claims.  We also hold that under the uncontroverted facts, Ruth 2 is not entitled to judgment on its claim of inverse condemnation.  Thus, we do not reach whether Ruth 2 substantially complied

with the claim filing requirements found in chapter 4.96 RCW or whether the common enemy

doctrine would preclude Ruth 2's claim of inverse condemnation.

We affirm.

FACTS

Donald Ruth and his wife, Elaine Ruth, own Ruth 2.[1] Donald has a degree in industrial

engineering and is a licensed electrician. Donald also has experience working on engineering

projects, primarily with major oil and gas companies in the service station business.

Ruth 2 owns property located at 301 East 26th Street in Tacoma. The property consists

of four undeveloped parcels of land on a lot that sits below street grade. East C Street slopes

downhill toward Ruth 2's property and runs adjacent to a portion of that property.

Ruth 2 generally leases the property for equipment storage; in the past, it commonly

received rent in the amount $1,500 per month. In 2014, Ruth 2 listed all four parcels for sale.

The record variously notes the combined listing price as $1.3 or $1.4 million. In July 2016, Ruth

2 leased its property to Garco, a subcontractor of Sound Transit, for use as a staging yard[2] in

connection with the construction of a new Amtrak station. Ruth 2 receives rent in the amount of

$2,000 per month from Garco.

On October 25, 2010, the City issued a permit to Sound Transit for work on East C Street

related to an extension project for the Sounder train. Sound Transit carried out the work on East

C Street adjacent to Ruth 2's property between September 2010 and early 2011. Sound Transit

achieved substantial completion of its project, which included improvements to East C Street, on

---

[1] We refer to the Ruths by their first names for clarity. We intend no disrespect.

[2] Donald described the staging yard as including Garco's equipment, standby supplies, waste product such as rock, concrete, broken concrete, and their machinery.

September 14, 2012. The improvements included the relocation and installation of a new storm

sewer on East C Street, along with regrading and repaving of the road, sidewalk, and alley,

among other matters.

Ruth 2 states it first noticed water flooding its property in June 2012. Donald provided a

declaration in opposition to summary judgment, which stated, in part,

> That over the years my property never flooded until sometime after the rail
> project. The alley was of sufficient height that the water would go into the drain. .
> . . There is puddling in the alley, however, this was a continuum as heavy trucks
> would use the alley over the decades, compact the alley, and the alley would be re-
> graveled so the drain system would work.
> That I had Larson Engineers survey the property situation as it now exists.
> They took multiple elevations in the alley. The alley elevations were basically 54.6
> to 54.8 feet. The elevation of the catch basin is over 55 feet, being 55.4 closest to
> the alley and tapering down to 55.2 in the road. As a result of this elevation it is
> impossible for water [to] flow from the alley into the catch basin. The new catch
> basin is 1.4 feet higher than the old one. The project is still in progress. Within the
> last month workers for the Sound Transit have re-graded the alley raising it to
> accommodate heavy equipment usage primarily. Raising the alley has two effects.
> It comes close to have [sic] equilibrium between the drain and alley, however, it
> has a reverse effect of making the alley a dike with respect to my property. Exhibit
> E [Clerk's Papers at 76-77] shows the flooding condition on my property, which
> never occurred before.

Clerk's Papers (CP) at 51-52.

On March 14, 2016, Ruth 2 filed a complaint for damages against Sound Transit. In the

complaint, Ruth 2 alleged that Sound Transit changed the grade and elevation of the storm sewer

adjacent to its property, which resulted in intermittent flooding causing injury to its property and

causing inverse condemnation. On April 20, the City received Ruth 2's claim for damages form.

On that form, Ruth 2 indicated the date of the incident was "[o]n or about 6/2012." CP at 44.

On May 4, Ruth 2 amended its complaint against Sound Transit to add the City as a defendant.

The heart of Ruth 2's claim against the City is that it negligently installed or approved

installation of a new storm sewer and failed to maintain a storm sewer, resulting in the flooding of Ruth 2's property, causing damages.

In April 2017, Steven Voorhies conducted a topographic survey for Ruth 2 and provided a map showing the current conditions on the property. The survey revealed a low point in the alley adjacent to Ruth 2's property, though Voorhies opined that surveyors would consider the alley along the entire length of the property fairly flat. Donald asserts that immediately after a heavy rain, the alley and his property flood at the low point on the survey where the drain used to be prior to Sound Transit's improvements. When asked regarding his opinion as to the pooling of rainwater on Ruth 2's property, Voorhies testified at a deposition that he had none and stated, "It could be attributed to a lot of things, but I'm not an engineer, so I couldn't really speak to that." CP at 155.

When asked about alleged diminution of value of the property, Ruth 2's real estate listing agent, Laura Fox, stated, "I don't have an opinion on a dollar amount. That's up to an engineer to determine." CP at 205.

Donald stated, "There's temporary damage. There's flooding. But there's no damage as such once it dries up." CP at 258. Ruth 2 has not had any of the following tests completed on the property: (1) environmental phase I testing, (2) percolation testing, (3) engineering testing, or (4) a storm drainage design analysis.

Sound Transit and the City moved jointly for summary judgment. Sound Transit and the City argued that Ruth 2's tort claims were barred by the statute of limitations, that Ruth 2 did not comply with the tort claim notice requirements under RCW 4.96.020, and that the common enemy doctrine barred Ruth 2's inverse condemnation claim. In support of their motion, Sound Transit and the City provided a variety of exhibits, including answers to interrogatories, claim

4

forms, declarations, denial letters, requests for admission, photographs, and surveys. Ruth 2 then filed its memorandum in opposition to summary judgment. Ruth 2's argument at summary judgment basically paralleled its arguments on appeal. Sound Transit and the City filed a reply in support of their motion for summary judgment and provided additional exhibits that included additional depositions and declarations, among other matters.

After hearing argument and considering the various documents both parties presented, the trial court orally ruled as follows:

> THE COURT: . . . As to the tort claims, I find that the statute of limitations has elapsed. In other words, I find for the defendants on both of the tort claims filed by the plaintiffs. In other words, both defendants, City of Tacoma as well as the transit company.
> Now, as to the inverse condemnation, I also find in favor of the defendants. I find that while the aggrieved party may have a degree in engineering, that does not in and of itself qualify him as to some of his observations. More to the point, I don't find anything in the court file that creates a material issue of fact as to the criteria for inverse condemnation, ergo the taking. Accordingly, as to the tort claims, I find on behalf of the defendants on the statute of limitations theory. As to the inverse condemnation, I find also for the defendant because of lack of material issues of fact as submitted by the plaintiff. So that's my ruling.

Verbatim Report of Proceedings (VRP) (May 19, 2017) at 7.

The trial court entered an order granting judgment in favor of the defendants Sound Transit and the City.

Ruth 2 appeals.

## ANALYSIS

### I. SUMMARY JUDGMENT

A.    Standard of Review

We review a grant of summary judgment de novo. *Killian v. Seattle Pub. Sch.*, 189 Wn.2d 447, 453, 403 P.3d 58 (2017). We sit in the same position as the trial court and analyze whether any genuine issues of material fact exist and whether one party is entitled to judgment as

a matter of law. *Id*. at 453-54; CR 56(c). We construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id*. at 454.

The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A moving defendant can meet this burden by showing that there is an absence of evidence to support the plaintiff's case. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 624, 818 P.2d 1056 (1991). The burden then shifts to the plaintiff to come forward with sufficient evidence to establish the existence of each essential element of the plaintiff's case. *Id*. at 625. If the plaintiff does not submit such evidence, summary judgment is appropriate. *Id*.

A nonmoving party must present more than "mere possibility or speculation" to successfully oppose summary judgment. *Doe v. Dep't of Transp.*, 85 Wn. App. 143, 147, 931 P.2d 196 (1997). "[M]ere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. *Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co.*, 122 Wn. App. 736, 744, 87 P.3d 774 (2004).

B.    Statute of Limitations

Ruth 2 argues the trial court erred when it ruled that the statute of limitations precluded its claim of negligence to real property.[3] We disagree.

An action for negligent injury to real property is subject to the catch-all two year statute of limitations. RCW 4.16.130;[4] *White v. King County*, 103 Wash. 327, 329, 174 P. 3 (1918);

---

[3] We address the statute of limitations argument only as it relates to any tort claims Ruth 2 may have had. Even though Ruth 2's claim of inverse condemnation occurred within the statute of limitations, that claim fails for other reasons outlined below.

[4] RCW 4.16.130 provides action for relief not otherwise provided for. The statute states as follows: "An action for relief not hereinbefore provided for, shall be commenced within two years after the cause of action shall have accrued."

*Wallace v. Lewis County*, 134 Wn. App. 1, 13, 137 P.3d 101 (2006). This type of negligence action accrues when the plaintiff suffers some sort of injury to his real property. *Wallace*, 134 Wn. App. at 13. We have said that "[t]he injury or damage must be 'actual and appreciable.'" *Id.* (quoting *Mayer v. City of Seattle*, 102 Wn. App. 66, 75, 10 P.3d 408 (2000)).

We may apply the discovery rule where there is a delay between the injury and the plaintiff's discovery of it. *Id.* If germane, the discovery rule postpones the running of a statute of limitations until the time when the plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action. *Id.* "Whether the plaintiff has exercised due diligence under the discovery rule is a question of fact" that the defendant must prove. *Id.*

Ruth 2 admitted in its claim for damages filed with the City that the incident, the alleged flooding, occurred "[o]n or about" June 2012. CP at 44. Ruth 2 did not submit evidence showing that it discovered the flooding at any time after June 2012. Thus, under the uncontroverted facts, Ruth 2's cause of action accrued at that time, and it had until June 2014 to pursue its legal claim. Ruth 2 filed a complaint for damages against Sound Transit on March 14, 2016, nearly two years after the statute of limitations had run.[5]

For these reasons, the trial court did not err when it ruled that the statute of limitations barred Ruth 2's claim of negligence against Sound Transit and the City.

C.    Inverse Condemnation

Ruth 2 argues that it made a prima facie showing of inverse condemnation that should have survived a motion for summary judgment. We disagree.

Article I, section 16 of the Washington Constitution limits the State's inherent power of eminent domain by requiring the government to pay reasonable compensation for taking or

---

[5] As noted, Ruth 2 amended its complaint to add the City as a defendant on May 4, 2016.

damaging private property for public use. *Phillips v. King County*, 136 Wn.2d 946, 956 & n.3, 968 P.2d 871 (1998). Inverse condemnation is an action instituted by a landowner "to recover the value of property which has been appropriated in fact, but with no formal exercise of the power of eminent domain." *Id*. at 957.

The elements of an inverse condemnation claim are (1) a taking or damaging (2) of private property (3) for public use (4) without just compensation (5) by a governmental entity that has not instituted formal eminent domain proceedings. *Id*. With regard to the first element, a taking or damaging occurs when the government invades or interferes with the use and enjoyment of a person's property, causing the property to decline in market value. *Martin v. Port of Seattle*, 64 Wn.2d 309, 318-20, 391 P.2d 540 (1964).

A landowner alleging an inverse condemnation must show more than a tortious interference with the use or enjoyment of his property. *Borden v. City of Olympia*, 113 Wn. App. 359, 374, 53 P.3d 1020 (2002). Flooding could provide the basis for an inverse condemnation as an "invasion" of property if the invasion is "permanent or recurring" or involves "'a chronic and unreasonable pattern of behavior by the government.'" *Gaines v. Pierce County*, 66 Wn. App. 715, 725-26, 834 P.2d 631 (1992) (quoting *Orion Corp. v. State*, 109 Wn.2d 621, 671, 747 P.2d 1062 (1987)). More specifically, a municipality may not collect surface water by artificial means, channel the water, and deposit it on private property, thereby causing damage, unless the municipality compensates the owner. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 874-75, 523 P.2d 186 (1974), *overruled on other grounds by Phillips*, 136 Wn.2d 946. An inverse condemnation claim may be proven by (1) the "diversion of waters from the direction in which they would naturally flow and onto the land of plaintiff" or (2) where "the amount of water has been increased." *Id*. The measure of damage in an inverse condemnation case is the

diminution in the fair market value of the property caused by the governmental taking or damaging. *Petersen v. Port of Seattle*, 94 Wn.2d 479, 482, 618 P.2d 67 (1980).

On this record, Ruth 2 has not presented prima facie evidence that raises a genuine issue of material fact as to a taking or damaging or diminution in value of its property. Under *Martin*, 64 Wn.2d at 318-20, the first element of inverse condemnation, a taking or damaging, requires that the affected property suffer a loss in value.

Ruth 2 did not engage a qualified expert to determine damages or diminution of value. Ruth 2 claims that Donald's deposition provides prima facie evidence that a genuine issue of material fact exists.[6] In that deposition, he expressed the following opinion:

> I believe one of the reasons that SME Solutions [a former lessee of Ruth 2] . . . perhaps left and moved to a different location was because the property flooded and they had a lot of equipment that got – water raised, came up about 1 foot on the property on their equipment.

CP at 260. Although Donald opined that a former lessee left because of the recurring flooding, Ruth 2 was able to subsequently lease its property at a higher rental rate than before Sound Transit's improvements, despite the alleged recurrence of flooding.

Either way, "mere allegations, denials, opinions, or conclusory statements" do not establish a genuine issue of material fact. *Int'l Ultimate*, 122 Wn. App. at 744. Consequently, Donald's belief as to why the lessee "perhaps left" does not establish a genuine issue of material fact as to whether the value of the property was diminished as required by the first element of inverse condemnation.

---

[6] Ruth 2 argues that Donald's declaration shows that he has an engineering degree and has supervised large engineering projects over the years, that over the years the property never flooded until after the rail project, that Donald testified if the alley was of sufficient height the water would go into the drain, and that a survey on file shows the new catch basin is 1.4 feet higher than the old one.

Further, in Donald's deposition, Sound Transit and the City asked about a response to an interrogatory he provided on the effect that the flooding had on the value of the properties. The City and Sound Transit asked,

> And your response is that according to your real estate agent, Laura Fox, who is involved in the listing properties – she feels that Form 17 disclosures will diminish the value of the property substantially in the 80- to $100,000 range. Is that an accurate statement?

CP at 263. Donald stated that he "guess[ed] so." CP at 263. When asked how he reached that opinion and what facts he used to reach the dollar value, Donald answered, "That's an estimate, my personal estimate." CP at 263. Yet, when asked about alleged diminution of value to the property, Fox, Ruth 2's real estate listing agent, stated in her deposition, "I don't have an opinion on a dollar amount. That's up to an engineer to determine." CP at 205.

We do not resolve questions of fact on review of summary judgment. We observe, though, that Donald's belief as to why a prior tenant perhaps left, his offering of a "personal estimate" on diminution of value and the real estate agent's inability to give a dollar amount of the claimed diminution all underline the conclusory nature of the evidence. The first element of inverse condemnation, a taking or damaging, requires that the affected property suffer a loss in value. *Martin*, 64 Wn.2d at 318-20. Under *Howell*, 117 Wn.2d at 625, and *International Ultimate*, 122 Wn. App. at 744, the qualified, conclusory evidence Ruth 2 submitted fails to meet its burden to produce evidence sufficient to establish some loss in value, an essential element of the first requirement for an inverse condemnation: a taking or damaging of property.

We do not hold that expert testimony on value is always required or that an owner's opinion as to the value of property can never be sufficient to raise an issue of fact. Rather, we hold that in the absence of expert testimony, Donald's equivocal statement of belief as to why a prior tenant left and as to reduction in value is insufficient to raise an issue of fact on summary

10

judgment. For this reason, the trial court did not err in granting summary judgment in favor of Sound Transit on Ruth 2's claim of inverse condemnation.

The City also is not liable under the uncontroverted facts for inverse condemnation in its role as the permitting body. Our Supreme Court has held that there is no public aspect supporting inverse condemnation when the government's only action is to approve a private development under then existing regulations. *Phillips*, 136 Wn.2d at 960-65. Still, the court recognized that in some factual situations there could be inverse condemnation liability on the part of government for failure to maintain a public drainage system. *Id*. at 966.

The City issued a permit to Sound Transit on October 25, 2010. As of March 3, 2017,

> [p]ursuant to the Right-of-Use Agreement and the Development Agreement between Sound Transit and the City of Tacoma, ownership of the infrastructure constructed by Sound Transit does not transfer to the City of Tacoma until the final inspection called for in the contract has been conducted and the City determines in writing that the work is 'substantially complete.' The final inspection has not occurred and the work has not been deemed, substantially complete, by the City.

CP at 55. This fact is uncontroverted on the record before us.

All the City did was to approve Sound Transit's permit. Because, as far as the record discloses, the City has not yet taken control of the infrastructure constructed by Sound Transit, the City cannot be found liable for any alleged failure to maintain a public drainage system. For these reasons, on the uncontroverted facts there is no public aspect supporting inverse condemnation against the City, and summary judgment was also proper with respect to the City.

On the uncontroverted evidence before us, the trial court did not err when it granted summary judgment in favor of Sound Transit and the City on the claim of inverse condemnation.

CONCLUSION

The statute of limitations bars Ruth 2's tort claims, and under the uncontroverted facts Ruth 2 is not entitled to judgment on its claim of inverse condemnation. With this resolution, we need not reach any other issues. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

I concur:

Sutton, J.

WORSWICK, J. — (Concur in part and dissent in part)  I concur with the majority's opinion that the two-year statute of limitation applies and bars Ruth 2, LLC (Ruth)'s  tort claims.  However, because the owner of property may properly testify as to the value of his or her property, I believe that a genuine issue of material fact exists regarding whether Ruth has established a prima facie case of inverse condemnation.

The majority's position that Ruth is required to engage a qualified expert to determine damages or diminution in value is not supported by law.  "The decisional law leaves no room for doubt that the owner may testify as to the value of his property because he is familiar enough with it to know its worth."  *Cunningham v. Town of Tieton*, 60 Wn.2d 434, 436, 374 P.2d 375 (1962); *Puget Sound Power & Light Co. v. Pub. Util. Dist. No. 1 of Whatcom Cty.*, 123 F.2d 286, 290 (9th Cir. 1941).  Despite established law to the contrary, the majority categorizes Ruth's testimony as "mere allegations, denials, opinions, or conclusory statements."  Majority at 9.

Because Ruth testified to a diminution in value of his property, there exists a genuine issue of material fact.  Consequently, I would reverse the trial court's summary judgment order as it relates to the inverse condemnation claim.

_____
Worswick, P.J.